AO 106 (Rev 04/10) Application for a Search Warrant (requesting AUSA LaBar

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

|  |  |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>a silver Motorola Moto, Type M266C cellphone, Model<br>XT1687, currently located at the FBI Philadelphia Division<br>offices. | ) ) ) ) ) ) |

Case No. 18- 1192-m **FILED**

**JUL 25 2018**

KATE BARKMAN, Clerk
By_____Dep. Clerk

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*

See attachment "A," incorporated by reference.

located in the _____ Eastern _____ District of __ Pennsylvania __ , there is now concealed *(identify the person or describe the property to be seized)*:

See attachment "B," incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. Sect. 875(c) | Threatening communications |

The application is based on these facts:

See atatched affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days· _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI Special Agent Joshua D. Reed
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/25/2018

City and state: Philadelphia, PA

_____
*Judge's signature*

U S. Magistrate Judge Richard A. Lloret
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE SEARCH OF
a silver Motorola Moto, Type M266C
cellphone, Model XT1687, currently located at        Case No.    18-1192-M.
the FBI Philadelphia Division offices.

**FILED**

**JUL 2 5 2018**

KATE BARKMAN, Clerk
By_____Dep Clerk

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION UNDER RULE 41 FOR A
### WARRANT TO SEARCH AND SEIZE

I, Joshua D. Reed, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—an

electronic device—which is currently in law enforcement possession, and the extraction from

that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have

been so employed for the past 20 (twenty) years.  I am currently assigned to investigate

Counterterrorism matters in the FBI, Philadelphia Division, Fort Washington Resident Agency.

During the course of Counterterrorism investigations, I have investigated domestic terrorism,

firearms violations and various cases concerning threats of violence. This affidavit is intended to

show only that there is sufficient probable cause for the requested warrant and does not set forth

all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

3.      The property to be searched is a silver Moto, Type M266C cellphone, Model

XT1687, taken from Julian Terrell Turk, hereinafter the "Device."  The Device is currently

located at the FBI Philadelphia Division offices.

      4.     The applied-for warrant would authorize the forensic examination of the Device

for the purpose of identifying electronically stored data particularly described in Attachment B.

### **PROBABLE CAUSE**

      5.     Julian Terrell Turk is a Federal Air Marshall (FAM), most recently assigned to the

Federal Air Marshal's Service (FAMS) Newark Field Office.  Turk entered on duty with the

FAMS in approximately 2008.  In or about May, 2017, Turk submitted paperwork requesting an

early Medical Retirement due to severe sleep apnea, anxiety, and depression.  To date, that

request has not been adjudicated.  Turk has not actively worked as a FAM since filing his

retirement request.  Turk has filed multiple Equal Employment Opportunity complaints against

the FAMS, and more specifically against FAM Executive Management of the Newark Field

Office.

      6.     On or about April 2, 2018, Turk, through the social media application WhatsApp,

telephone number (216) 272-4693, contacted Person 1.  Person 1 is a former FAM.

Additionally, Person 1 was formerly a member of the United States Navy and had received Sea

Air and Land (SEAL) training.  Turk requested that Person 1 provide him, Turk, with a point of

contact for someone to train Turk on how to make and use explosives, and also to provide a list

of books and resources on long range rifle shooting.  Person 1 reported Turk's alarming request

to law enforcement.

      7.     On April 5, 2018, at the direction of the FBI, Person 1 provided Turk with contact

information, as Turk had requested, for someone purportedly willing to assist Turk with using

and making explosives.  The contact information provided to Turk, however, was not that of an

explosives expert but was instead contact information for an undercover FBI Agent (UC).

2

8.      On April 7, 2018, Turk, through WhatsApp, telephone number (216) 272-4693,
contacted the UC by text message. In the text message, Turk asked to meet face to face with the
UC to obtain "(g)uidance and expertise," and wrote that he  "...would rather chat in person.
Can't write it out. You'd be getting paid...reasonable price." The UC responded with the
following text message, "I don't meet until I have to. This is secure way to talk. Its encrypted. I
have no idea who you are. WA (WhatsApp) until I know you're legit." Turk provided the
following response: "Well that's the same way I feel. Plus the person that referred you trusts me
and that's why we were placed in contact with one another. What I need I can't and won't write
to someone that I don't know either.  I'd tell you in person, but if you still want to be secret
squirrel then I'm fine with that and we can both move on? Contact our mutual friend and he'll
vouch for me. You don't need to do anything physical. You're just teaching me stuff. He can
fill you in!"

9.      On April 7, 2018, subsequent to the above exchange, Turk re-contacted Person 1
with the following text messages: "Your dude (referring to the UC) is a whack job. Thanks for
the try. Dude won't meet without pay, wants me to write what I want, seems squirrrelly (SIC)."
Turk said that he would take care of it on his own.

10.     On April 13, 2018, Turk sent an electronic mail (email) message to Person 2, also
a former FAM. The email was one of approximately 27 emails Turk sent to Person 2 on the
same date. The following are excerpts from the email message: 1. "There comes a time in
one's life that he has to take a stand against what's "right" and not "white" here, now, is my
chance to do that. These motherfuckers have gone out of their way to fuck with me in the worst
way possible. And frankly, I've had a Got Damn nuff of it. So, I've decided to fuck with them.
I'm going to take the fight to these FUCKS!" 2. I'd never ask one of yall to take-on something

3

that would get any of you in trouble.  But sometimes enough is enough and you have to take a stand.  These FUCKS think they're untouchable and that they can't be gotten to.  I'm going to show them how to fuck with someone."   3.  "As I've said, I'm taking the fight to these motherfuckers now.  Know that, I'd never take my own life, my children are always a for-though (SIC) on my mind.  But what kind of man would I be if I didn't live up to my motto and creed of "Being a Man for Others!"  So I've come up with a plan to get them for what they've done to me.  In the event that something happens to me, please make sure to look after my children.  There will be money for them.  But make sure they are reasonably looked after, just talk to them and let them know that their Father loved them very much and was willing to take down mountains for them!"

11.    On April 14, 2018, 12:26 a.m., an Involuntary Commitment Order (302 Order) was approved in the County of Bucks, Pennsylvania.  Pursuant to the 302 Order, Turk was taken into custody on April 14, 2018 and then taken to the Lower Bucks Hospital as per the 302 Order.  Turk was taken into custody at his residence, 43 Camellia Road, Levittown, PA 19057.  Subsequent to Turk being taken into custody, A. M., Turks girlfriend of approximately six years, and the biological mother of his two minor children, voluntarily surrendered to the arresting agency weapons belonging to Turk.  In total, 19 firearms were surrendered to specifically include 12 long guns and seven handguns.  On April 17, 2018, A.M. voluntarily surrendered three additional handguns she had found in the home she shares with Turk.

12.    On April 17, 2018, a hearing was held before a Montgomery County, Pennsylvania Judge.  The purpose of the hearing was to determine if Turk's involuntary commitment should be continued for an additional period of time.  The treating mental health professional overseeing Turks commitment recommended to the Court that Turk's involuntary

4

commitment be continued for a period of approximately seven days. The Court did not concur with the recommendation and released Turk from his involuntary commitment. Turk returned to his residence that same day.

13.    On May 3, 2018, Turk spoke by telephone with Person 3. Person 3 is a former FAM and co-worker of Turk. Person 3 is currently a Special Agent with the Drug Enforcement Agency. During this conversation, Turk expressed anger towards the Newark FAM field office. Turk questioned why Person 3 liked any of the "racist motherfuckers" in the Newark FAM Field Office. Turk specifically identified five former Newark FAMs and one of their family members as individuals he does not like. Turk advised that "if any of them (FAM) says hi to me on the streets, there is going to be a problem."

14.    Also during the May 3, 2018, conversation, Turk specifically discussed his intention to assault FAM David Alexander, an Air Marshal assigned to the FAMS Newark office. Alexander and Turk were co-workers in the Newark FAM Field Office. Turk told Person 3 that "if I see him (Alexander) he is going to be in the hospital and I am going to punch his wife (name) in the face and spit on them both." FAM Alexander's wife is not employed by the FAMS.

15.    Also during the May 3, 2018 conversation with Person 3, Turk said that if his children had not been present when he was taken into custody, pursuant to the 302 Order, on April 14, 2018, it would have been a "force on force" situation. Based upon your affiant's experience, the expression "Force on Force" is a reference to an armed confrontation.

16.    On May 4, 2018, an Arrest Warrant for Julian Terrell Turk was issued, via Criminal Complaint, by the United States District Court for the Eastern District of Pennsylvania. The arrest warrant was served on the same date. The FBI, utilizing Turk's fiancee's cellular

phone, called Turk at telephone number (216) 272-4693. Upon answering the call, Turk was advised there was a federal warrant for his arrest and was instructed to exit his residence. Approximately one minute later, Turk exited his residence. Turk was carrying the cellular phone described in this warrant application (The Device) in one of his hands. The phone was seized pursuant to the arrest.

17.     The Device is currently in the lawful possession of the FBI. As discussed it came into the FBI's possession when it was seized from Turk incident to arrest. Therefore, while the FBI might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws. I believe that Turk used this device to make some of the calls and text messages described in this affidavit, and evidence of those contacts will be found on the device.

18.     The Device is currently in storage at the FBI in Philadelphia, Pennsylvania. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

## TECHNICAL TERMS

19.     Based on my training and experience, I use the following technical terms to convey the following meanings:

> a.     Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or

traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term   IP addresses, while other computers have dynamic— that is, frequently changed—IP addresses.

c.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same state.

20.     Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve a wireless telephone, internet web browser, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, and their communications.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

22.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

       a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

8

b.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24.    *Manner of execution* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the

Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Device described in Attachment A to seek the items described

in Attachment B.

Respectfully submitted,

JOSHUA D. REED
Special Agent, FBI

Subscribed and sworn to before me
on July 25, 2018:

BY THE COURT:

HONORABLE RICHARD A. LLORET
United States Magistrate Judge

10

## ATTACHMENT A

ITEMS TO BE SEARCHED

This warrant authorizes the forensic examination of the Device discussed above and described below for the purpose of identifying the electronically stored information described in Attachment B.

The Device: a silver Motorola Moto, Type M266C cellphone, Model XT1687, currently located at the FBI Philadelphia Division offices.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of 18

U.S.C.§ 875 and involve Julian Terrell Turk since April 1, 2018, including:

   a.   Documents in electronic form, including correspondence, records, opened or
        unopened emails, text messages, voicemail messages, call logs, chat logs, internet
        history.

   b.   Evidence of user attribution showing who used or owned the Subject Telephone at
        the time the things described in this warrant were created, edited, or deleted, such
        as logs, phonebooks, saved usernames and passwords, documents, and browsing
        history.  As used above, the terms "records" and "information" include all of the
        foregoing items of evidence in whatever form and by whatever means they may
        have been created or stored, including, but not limited to the following:

   c.   Forms of computer or electronic storage (such as flash memory or other media that
        can store data) and any photographic form.

   d.   Data that has been manually programmed into a GPS navigation system, as well as
        data automatically stored by the GPS navigation system, including any and all
        electronic data which can be collected, analyzed, created, displayed, converted,
        stored, concealed, or transmitted, or similar computer impulses or data.

   e.   Stored electronic information and communications, including but not limited to,
        telephone or address directory entries consisting of names, addresses and telephone
        numbers; logs of telephone numbers dialed, telephone numbers of missed calls,
        and telephone numbers of incoming calls; schedule entries; stored memoranda;
        stored text messages; stored photographs; store audio; and stored video.

f. Evidence and contents of logs and files on the Subject Telephone, such as those generated by the Subject Telephone's operating system, which describes the history and use of the Subject Telephone, including but not limited to files indicating when files were written, were opened, were saved, or were deleted. Evidence tending to show the identity of the person using the Subject Telephone at the time any actions relating to the above offenses were taken.

g. Records evidencing the use of the Internet, including: records of Internet Protocol addresses used; records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.